UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:14-cv-21515-DPG

JACOB LUIHN and
JOHANNA LUIHN,

Plaintiffs,

v.

MX, INC., a Foreign for profit Corporation,
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, a Foreign for profit Corporation, and
FRANK NICHOLS, an individual.

Defendants.
_____/

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF RECORDS INCLUDING RAW DATA OF
INDEPENDENT NEURO-PSYCHOLOGICAL EXAMINATION**

Comes now the plaintiffs by and through the undersigned attorney and move this Honorable Court to enter its order compelling defendants to 1) produce all raw data, testing material, handwritten notes and actual tests utilized by the defense expert in reaching any conclusion in this case to plaintiff's counsel; and 2) to produce test booklets used in the neuropsychological evaluation of plaintiff at the defense expert's deposition; and as grounds therefore, plaintiff would submit the following:

Introduction

This action involves a claim that plaintiff has suffered traumatic head injury. Defendant sought to have plaintiff examined by Dr. Sally Kolitz Russell, a neuropsychologist. Plaintiff has agreed to submit to said examination but plaintiff's counsel reserved their right to receive production of all raw data (see Document Number 33, Agreed Order Regarding Independent Neuropsychological Examination of Plaintiff Jacob Luihn by Dr. Sally L. Kolitz Russell attached hereto as Exhibit #1, testing material, handwritten notes, actual tests and contemporaneous videos during testing utilized in reaching any conclusion in this case (these materials hereinafter will be referred to as the



EXHIBIT "A"

"raw data"); and #3 the test booklet(s) used by plaintiff be provided at defendant doctor's deposition.

However, plaintiff's counsel will demonstrate the plaintiff's case requires the raw data be produced, as requested above, to adequately prepare this litigation; the release of the raw data to non professionals for litigation purposes is allowed; and that procedures are in place allowing for the release of raw data without compromising the integrity of the test(s) or the plaintiff's test data.

### Argument I
### Plaintiff's counsel is entitled to the raw data, testing materials, handwritten notes and actual tests utilized in reaching any conclusion in this case;

Defendant's, may argue the specific tests are copyrighted proprietary trade secrets which, under Florida Law, are only releasable to another licensed psychologist. However, this statement is inaccurate. Ch 64B19-18.004(3) states:

> "A psychologist who uses test instruments may not release test data, such as test protocols, test questions, assessment-related notes, or written answer sheets, except (1) to a licensed psychologist . . . . or (3) **when the release of the material is otherwise required by law.**"

This neurological evaluation and testing is the basis of the defense expert's testimony as such it is important that this court determine whether or not:

    A.    The tests the doctor claims she gave were actually given.
    B.    The test was scored correctly.
    C.    The tests actually tests for those issues which the doctor testifies that it does.
    D.    The patient actually answered the questions (i.e. is the handwriting actually the patients?
    E.    The doctor interpreted the actual scores in accordance with appropriate manuals.

The defense's position is akin to permitting the defendant's medical expert to have an ex parte deposition of a brain damaged plaintiff with no court reporter to protect for accuracy. The defense admits that the *patient* gets to see the raw data. The patient *has*

the raw test data (i.e. test questions) given to him and used against him in this case but the defense seeks to preclude the patient's own attorney from seeing the very items that serve as the basis for the defense in this case. The psychometrician, who may not have *any* college education whatsoever, gets to see the raw data. The *secretary* typing up the report and copying pages for the file gets to see the raw data. The only person prevented from seeing the raw data is the person who needs it the most, the patient's attorney.

Defense claims that providing the data to the plaintiff's *expert psychologist* will comport with the law and should address the plaintiff's concerns. It does not because of the following:

    A.    The doctor does not know or remember if the patient actually answered the questions as set forth in the raw data because the plaintiffs treating doctor was not present when the defense medical expert examined the patient.

    B.    The lawyer cannot familiarize himself with the actual answers given by the plaintiff nor can he ask the plaintiff why certain questions were answered in a certain fashion so as to explain the results.

    C.    The defense position requires the plaintiff, ultimately responsible for the cost of this law suit, to pay an expert hundreds of dollars per hour (his own psychologist) to go through this information when the plaintiff's lawyer is paid on a contingency basis and it, therefore, does not cost the plaintiff additionally for his or her lawyer to go through the material.

    D.    Even if the plaintiffs treating psychologist has access to the raw data, he or she will not know the forensic significance of same. For example, the DME may claim he conducted a very thorough examination and his report reflects all significant findings. However, the plaintiff's lawyer may find that a question answered on the MMPI(2) reveals the patient endorsed suicidal items. Claiming to write a thorough report and leaving out the fact that the patient was actively suicidal has great forensic meaning that would be missed by a non-lawyer.

    E.    The defense's position assumes the treating psychologist already has the particular version of the tests and test questions given by the DME. (There are, for example, multiple versions of the Weschler Adult Intelligence Scale)

This is frequently a fallacious assumption because there are hundreds of potential psychological tests and multiple versions. Without producing the tests and test questions, it thus requires the plaintiffs treating doctor to go out and buy the test and test questions and such costs are ultimately passed on to the plaintiff in this law suit.

F. The lawyer cannot have a confidential conversation with his client about the reasons he or she answered items in a certain manner because the only way to find out the raw data is to include a third party, the plaintiff's psychologist, which then eliminates attorney client privileged communications. The defense would have the opportunity to cross-examine the psychologist about the conversations between the plaintiff and his attorney in the presence of the doctor.

G. The attorney could hire a psychologist and have the very same tests administered to the lawyer and thus *see* the actual questions at great and unnecessary expense. Therefore, the argument that the lawyer cannot see the items is illogical. The lawyer *can* see the items. He just has to undergo an expensive and irrelevant psychological examination and thus he will have seen each and every item.

H. The problem is that the lawyer has no framework with which to place the items. I.e. why did my client answer true to question 32 of the MMPI(2)? The lawyer needs this information to be able to not only examine the Defendant's medical expert about the test but explain to the jury why the client, for example, might have an elevation in the hypochondrias scale that actually reflects legitimate organic pathology. If a scale gives points towards being a hypochondriac when the plaintiff admits to symptoms consistent with that disorder, hoping the plaintiff's expert will be able to explain this in vague terms to the jury is not sufficient. Furthermore, the treating psychologist may not have the medical reports which outline those very symptoms that will be in the hands of the plaintiff's lawyer.

I. The *jury* needs to *hear* the items that give rise to elevations in certain scales to weigh the legitimacy of the conclusion. For example, if the doctor claims the plaintiff is malingering based on the Fake Bad Scale, the jury has the right to understand the scale and the plaintiff's lawyer has the right and must be able to explain to the jury that each item endorsed by the plaintiff such as headaches, stomach problems, can be explained by a brain injury and narcotics causing gastric upset. Failure to permit the plaintiff's lawyer to do so removes his ability to prosecute the case and places him in the position of hoping the jury will

> simply believe his expert over the defense expert without giving the jury the actual facts upon which to draw the conclusions themselves.

Most importantly, §90.705(2) of the Florida Evidence Code entitled "Disclosure of Facts or Data Underlying Expert Opinion" states in relevant part:

> Prior to the witness giving the opinion, a party whom the opinion or inference is offered may conduct a voir dire examination of the witness directed to the underlying facts or data for the witness's opinion. If the party establishes prima facia evidence that the expert does not have a sufficient basis for the opinion, the opinions and inferences of the expert are inadmissible unless the party offering the testimony establishes the underlying facts or data.
> 
> (See Exhibit 2)

In order for the plaintiff to determine whether the underlying facts or data are sufficient for the witness to give their opinion, the attorney must have the data, including what answers were given to the doctor by the plaintiff, whether the tests in question were actually given and whether the hand written material completed by the plaintiff was actually completed.

To preclude the lawyer from even seeing his own client's responses and the questions asked would mean he would not have the opportunity to even inquire or explain to the court or jury why the answers exist.

Courts frequently order release of raw data. See exhibit #2 for cases where Orders Permitting the Release of Raw Data were entered. Many cases in the past required the release of raw data pursuant to court order. See *Rose-Meucci v. Safelite Glass Corp, et. al.* listed in Exhibit 2.

Plaintiff understands the importance of maintaining the integrity of the test materials. Many of the tests have a limited number of questions and that these versions are very expensive and highly researched. If these test items were leaked it would severely compromise the value of the tests. However, even The Psychological Corporation, realized that there were times such as during litigation, "where the court considers ordering the release of proprietary test materials to non-professionals, such as

counsel. If the court requires the release of these items, The Psychological Corporation, requests that the court issue a protective order prohibiting the parties from making copies of the materials; requiring that the materials be returned to the professional at the conclusion of the proceeding; and requiring that the materials not be made part of the record of the case."

The 2004 position of Psychological Corp. is exactly the same position held by Pearson Assessments the current owners of these test materials as stated on their website:

> "Pearson does not wish to impede the progress of legal proceedings; however, we are equally unwilling to jeopardize the security and integrity of our test instruments by consenting to the release of copyrighted and confidential material to those not professionally qualified to obtain them. Should litigation in which a psychologist is involved reach the stage where a court considers ordering the release of proprietary test materials to non-professionals such as counsel, we request that the court issue a protective order prohibiting parties from making copies of the materials; requiring that the materials be returned to the professional at the conclusion of the proceedings; and requiring that the materials not be publicly available as part of the record of the case, whether this is done by sealing part of the record or by not including the materials in the record at all.
>
> In addition, testimony regarding the items, particularly that which makes clear the content of the items, should be sealed and again not be included in the record. Pleadings and other documents filed by the parties should not, unless absolutely necessary, make specific reference to the content of or responses to any item, and any portion of any document that does so should be sealed. Finally, we ask that the judge's opinion, including both findings of fact and conclusions of law, not include descriptions or quotations of the items or responses. We think this is the minimum requirement to protect our copyright and other proprietary rights in the test, as well as the security and integrity of the test."

Plaintiff's counsel has reviewed the conditions set out above and is willing to abide by them.

Psychological and/or neuropsychological batteries cannot diagnose with specificity or exactness any conditions, but really tell us simply how an individual compares to other individuals who might have taken the same test. Not having access to

raw data does not permit the plaintiff to explain to his or her lawyer why he or she may have answered a question a certain way. To claim it is sufficient to send the raw data to the plaintiff's neuro-psychologist is *not sufficient*. That eliminates the ability of the lawyer to have a confidential conversation with the plaintiff about why the plaintiff answered questions a certain way and required the additional time and expense of paying his or her expert to discuss the test results without letting the patient even see them to verify if the answers truly reflected the plaintiffs responses. To preclude the lawyer from even seeing his own client's responses and the questions asked would mean he would not have the opportunity to even inquire or explain to the court or jury why the answers exist.

Some psychological tests may result in the plaintiff being accused of malingering. This can result in the plaintiff being charged with two crimes - Perjury and Insurance Fraud. The risk is greater than simply losing a personal injury claim and losing funds by which to pay for future medical care. These tests can result in criminal prosecution and denying the plaintiff and his or her attorney the right to see the data upon which the defense expert reaches his conclusion deprives the lawyer of being able to adequately prepare for and engage in meaningful cross-examination.

An unlicensed non-psychologist (the psychometrician who gives and interprets the test for the psychologist) can see the test material but the *lawyer* representing the plaintiff cannot. This ties the hands of the attorney in his ability to verify, explain or understand the testing conducted on his own client. In order for the plaintiff to determine whether the underlying facts or data are sufficient for the witness to give their opinion, the attorney must have the data, including what answers were given to the doctor by the plaintiff whether the tests in questions were actually given and whether the hand written material completed by the plaintiff was actually completed.

Obviously, in order for Plaintiff to determine whether the underlying facts or data are sufficient for the witness to give the opinion, counsel for Plaintiff must have the underlying facts or data. Without the facts, Plaintiff is unable to challenge the ultimate opinion or conclusion that the neuropsychologist is drawing from the test data. To claim that we must be limited to our experts reviewing the raw data defeats the very nature and spirit of discovery rules. Furthermore, it assumes

> A. Our expert actually owns the tests selected by the defense expert. There are hundreds of psychological/ neuropsychological tests an expert can purchase and to require the Plaintiffs expert to purchase all tests selected by the defense, is unnecessarily burdensome.
>
> B. This precludes our ability for the plaintiff to confirm that, in fact, the answers and/or handwriting on the responses are actually hers.

Furthermore, the defense argument that these tests cannot be disseminated because it could show individuals how to "beat the test" must consider the fact that these are already available for purchase. In fact, Paul Lees-Haley in his article, *Are Psychologist Hiding Evidence?* makes it clear that anyone can go to the Library of Congress and review the tests. Paul R Lees-Haley & John C. Courtney, *Are Psychologists Hiding Evidence? A Need for Reform*, Claims Magazine (2002). Moreover, numerous books have been sold to the general public including the MMPI, MMPI-II and MMPI-A for use in court by Dr. James Butcher which contains the entire MMPI2 items within the book, as well as another book Development and Use of the MMPI-2 Content Scales, by authors Ben-Porath, Butcher, Graham and Williams which also contain the entire test.

Additionally, the unique nature of neuropsychological testing is such that the examiner can control the results of the exam (i.e. someone is or is not brain damaged, someone is or is not depressed, etc.) by the very nature in which the examination is given. For example, someone may subtly suggest an answer as the question is given and the examinee will then score out as quite unimpaired. Without the ability to review the raw data, counsel is unable to effectively cross exam the neuropsychological regarding his actions during testing.

## Conclusion

The Court should enter an order allowing the release of the Raw Data to the Plaintiffs' counsel. Plaintiff has further demonstrated his counsel has a need for, and is entitled to not only to the defense experts report but also a full and complete copy of all

the raw data testing material, handwritten notes and actual tests utilized by the defense expert in reaching any conclusion in this case. The undersigned is cognizant of the need to protect the integrity of the tests and test results and agrees not to disseminate the raw data outside this lawsuit and will shred an raw data at the conclusion of this matter.

Wherefore, plaintiff asks this Court to enter an Order granting Plaintiff's request requiring the defendant and/or the defense expert, Dr. Sally Kolitz Russell to provide plaintiff's counsel with all of the raw data testing material, handwritten notes and actual tests utilized by Dr. Sally Kolitz Russell, the defense expert, in reaching any conclusion in this case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 23, day of December, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system. I also certify that the forgoing document is being served this date on all counsel of record or pro se parties on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____
Daniel J. Rheaume, Esq.

## SERVICE LIST

Derek H. Lloyd, Esq.
Luks, Santaniello, Petrillo & Jones, P.A.
150 W. Flagler Street, Suite 2750
200
Miami, Florida 33130
Telephone: 305-377-8900
Fax: 305-377-8901
Email: Dlloyd@LS-law.com
luksmia-pleadings@ls-law.com
Attorneys for Defendants
Party Name: MX, Inc. and Frank Nichols

Bruce M. Trybus, Esq.
Cooney, Trybus, Kwavnick, Peets
1600 W. Commercial Blvd., Suite

Ft. Lauderdale, Florida 33309
Telephone: 954-568-6669
Fax: 954-568-0085
Email: btrybus@ctkplaw.com
Attorneys for Defendant
Party Name: State Farm Mutual
Automobile Ins. Co.

Morgan G. Adams, Esq.
Law Offices of Morgan Adams
1419 Market Street
Chattanooga, Tennessee 37402
Telephone: 423-265-2020
Fax: 423-265-2025
Email: adams@tennesseeaccidentlaw.com
       jennifer@tennesseeaccidentlaw.com
Attorneys for Plaintiffs
Party Name: Jacob and Johanna Luihn

NOR-17940M/CP 195 /DJS:jxp

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

CASE NO.: 14-CV-21515-GAYLES/TURNOFF

JACOB LUIHN AND
JOHANNA LUIHN,

    Plaintiffs,

v.

MX, INC., et al.

    Defendants.
_____/

### AGREED ORDER REGARDING INDEPENDENT NEUROPSYCHOLOGICAL EXAMINATION OF PLAINTIFF JACOB LUIHN BY DR. SALLY L. KOLITZ RUSSELL

THIS CAUSE came before the Court upon Plaintiffs and Defendants MX, Inc., and Frank Nichols's Joint Stipulation for Order Regarding Independent Neuropsychological Examination of Plaintiff Jacob Luihn by Dr. Sally L. Koliz Russell dated September 16, (ECF NO. 32) 2014, and the Court having been otherwise duly advised, it is hereupon,

**ORDERED AND ADJUDGED** that:

1. Plaintiffs and Defendants' MX, INC., and FRANK NICHOLS's Joint Stipulation for Order Regarding Independent Neuropsychological Examination of (ECF NO. 32) Plaintiff Jacob Luihn by Dr. Sally L. Koliz Russell dated September 16, 2014, is hereby **Granted**; and



Case No.: 14-CV-21515-GAYLES/TURNOFF
Page 2

2. The following conditions shall apply to the independent neuropsychological examination conducted of Plaintiff JACOB LUIHN by Dr. Sally L. Kolitz Russell:

a. No persons other than the examinee and examiner (and a professional translator if required) are permitted to remain in the testing room during the examination. The videographer may change the recording media during breaks in the testing.

b. The recording system must be able to run for at least 90 minutes at a time, without interruption. All portions of the testing will be video and audio taped.

c. The media will be retained by the office of Russell & Kolitz, LC and will be treated as raw test data. Upon written request and payment of postage, the media will be sent directly from our office to another licensed psychologist and/or Plaintiff's treating neuropsychologist for review, pursuant to the rules set forth in the Florida Administrative Code, regarding raw test data.

d. The media will be destroyed or returned to the office of Russell & Kolitz, LC at the conclusion of the case.

e. Portions of the media containing test instructions, test items, or test responses shall not be made publicly available as part of the record of the case.

Case No.: 14-CV-21515-GAYLES/TURNOFF
Page 3

  f. Testimony regarding test instructions, test items, or test responses shall be sealed and not included in the public record.

  g. Pleadings and other documents filed by the parties should not make specific reference to the content of tests or responses to test items unless absolutely necessary; any portion of any document that does so shall be sealed.

  h. Plaintiffs' counsel reserves the right to request the raw data at a future date and have the merits of such request determined by the Court.

  **DONE AND ORDERED** in Chambers at Miami, Florida, this ___ day of September 2014.

              _____
              WILLIAM C. TURNOFF
              UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to:</u>
Hon. Darrin P. Gayles
All counsel of record

Exhibit #2
Orders Requiring the Release of
Raw Data to Plaintiff's attorney

1. *Johnson v. McPhee and The First American Corporation,* Case No 05-2005-CA 019394; order dated 5/23/08.

2. *Williams v Loomis Fargo & Co and Schwartzberg,* Case No 50-05-CA 5516; order dated 11/20/06.

3. *Livingston v Southern Baptist Hospital,* Case No 2004 CA 002562 order dated 7/28/05, *Jenkens v Averbach et al,* Case No 99 162 CA 01, order dated 4/4/03.

4. *Pabst v Meadvin,* Case No 0 1-2006 CA 1545 order dated 2/09/2009.

5. *Rose- Meucci v Safelite Glass Corporation and Bright,* Case No 06 730 CA, order dated 8/20/08. *

6. *Heving v Buchert,* Case No 05-2001 CA-008694, order dated 5/20/05.

7. *Karpicky v Aqua Beauty Queen, et al,* Case No 13-C-06-65745, Maryland circuit court, Howard county, order dated 8/22/07.

8. *Richardson v Farnsworth Farms et al,* Case No 38-2004-CA-0381, order dated 10/11/06.

9. *Beekman v Besinger and Baker,* Case No 04-965-CA-K, order dated 9/16/05.

10. *Lee v Hasani V Kinzie and Boyd,* Case No 05-1297-CI-8, order dated 9/14/07.

11. *Rodriguez v U.S. Parking Limited, Inc,* Case No 06-05204, order dated 5/5/05.

12. *Zuleta v Puncost,* 05-02142-CA75, order dated 5/8/07


EXHIBIT "2"