UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-CV-21515 – GAYLES/TURNOFF

JACOB LUIHN and JOHANNA LUIHN,

        Plaintiffs,

v.

MX, INC and FRANK NICHOLS,

        Defendants.

**PLAINTIFFS' OMNIBUS MOTION IN LIMINE**

COME NOW the Plaintiffs, by and through the undersigned counsel, and hereby move this Honorable Court for an order in *limine* requiring that the Defendants, their attorneys, and all witnesses be instructed by appropriate order of this Court to refrain from making any mention and from questioning, directly or indirectly, in any manner, concerning any matters referred to in this motion.  The matters set forth below are inadmissible, unforeseeable and have no bearing on the issues in this case or the rights of the parties to this suit. Permitting any mention of these would unfairly prejudice the jury. Sustaining objections to these matters would not cure the prejudice but would reinforce the unfair, prejudicial impact.

    A.    <u>**General Rules Governing Evidence at Issue.**</u>

Motion *in Limine* presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial. *Stewart v. Hooters of America, Inc*., 2007 WL 1752873 *1 (M.D. Fla. June 18, 2007) (*citing Schuler v. Mid–Central Cardiology*, 313 Ill.App.3d 326, 246 Ill. Dec. 163, 729 N.E.2d 536 (4th Dist.2000)).

The real purpose of a Motion i*n Limine* is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial. *Stewart*, 2007 WL 1752873 at *1. A court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds. Id. (*citing Luce v. United States*, 469 U.S. 38, 41, 105 S.Ct. 460, 83 L.Ed.2d 443(1984) (holding federal district courts have authority to make *in limine* rulings pursuant to their authority to manage trials). The court excludes evidence on a Motion i*n Limine* only if the evidence is clearly inadmissible for any purpose. Stewart, 2007 WL 1752873 at *1 (*citing Hawthorne Partners v. AT & T Technologies*, 831 F.Supp. 1398, 1400 (N.D.Ill.1993)).

Motions *In Limine* are generally disfavored; admissibility questions should be ruled upon as they arise at trial. *Stewart*, 2007 WL 1752873 at *1. Accordingly, if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context. Id. Denial of a Motion *in Limine* does not insure evidence contemplated by the motion will be admitted at trial. *Id*. Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context. *Id*. (*citing U.S. v. Connelly*, 874 F.2d 412,416 (7th Cir.1989)). The Court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied Motion *in Limine*. *Stewart*, 2007 WL 1752873 at *1. "Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id*. (*citing Hawthorne Partners*, 831 F.Supp. at 1400–01).

Pursuant to Rule 4-4.3, Rules Regulating the Florida Bar, a lawyer shall not, in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personally the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused.  Because the evidence outlined below has little or no probative value, its obvious prejudicial effect requires exclusion.

B.       **Specific Evidence To Be Excluded**.

Plaintiff stresses the fact that this is a personal injury trial that is necessarily meant to focus on the key issues identified in the General Background Section. Allowing the Defendants to pursue issues and bring before the jury matters wholly unrelated will only serve to confuse and prejudice the jury, and will undoubtedly extend the amount of time needed to present this case.

As such, Plaintiff moves to exclude the following:

### 1. Plaintiffs' counsel agreement that doctors would be paid.

Any reference or claim that plaintiffs' lawyers were unethical for signing a letter agreeing the attorneys would make sure that doctors would be paid from any monies obtained by settlement or judgment.  These letters do not make payment contingent upon a successful outcome of the case, nor do the attorneys personally guarantee payment.  Rather, the letters make clear that the patient, Mr. Luihn, is ultimately responsible for payment of all medical bills regardless of the outcome.  The letters simply provide the physician assurance that the physician will not need to take any action to enforce a lien against any recovery or retain counsel to collect his or her fees from any recovery in this case.  The letters simply guarantees that any monies collected from the person and/or entities who caused the injuries requiring medical treatment, will be used to pay for that treatment.

**2. Plaintiffs' counsel's payment of medical and/or doctor bills.**

Any reference plaintiff's lawyers were unethical for paying any of the doctor's bills. Dr. Arias indicated Mr. Rheaume paid his bill, which is incorrect and did not occur.

**3. Plaintiff's agreement to pay doctors.**

Any reference that the doctors testifying for the Plaintiff were unethical for signing a document agreeing to pay the doctor upon resolution of the case. This is not a letter of protection wherein the doctor agreed to be paid contingent upon prevailing.

**4. Doctors testifying.**

Plaintiffs anticipate that the defense will attempt to create an inference that is improper or unethical for a treating physician to provide expert testimony on behalf of a patient and/or to meet with that patient's legal counsel. Doctors like all witnesses are required to testify pursuant to a subpoena. Moreover, the Plaintiff must rely upon treating physician and other medical providers to provide evidence of injury, treatment and prognosis to the jury. In addition to being fact witnesses, doctors are obviously also experts by virtue of their respective education, training and experience.

**5. Dr. Kolitz-Russell refused to permit Plaintiffs' counsel from viewing, copying or marking a testing instructional manual.**

During her deposition, Dr. Kolitz-Russell was confronted with the fact that she did not follow the strict instructions for the proper administration of certain testing she administered to Mr. Luihn (WAIS-III and HRNES-R). She had the manuals with her at deposition that set forth the procedures to be followed during the administration of the tests, but would not allow them to be marked, copied or even viewed.

> Q.  We'd like to attach the manual since you are claiming what they say, you're claiming you did them [the tests] correctly –
>
> A.  I'm not going to attach a manual. Someone can easily buy a manual. This is my manual.
>
> Q.  I want to attach the manual, just so there is no question --
>
> MR. PADILLA: Counsel --
>
> Q. -- I want to attach a copy of the manual that you are referring to - to this deposition as Plaintiffs' No. 8.
>
> A. No.
>
> MR. PADILLA: I'm sorry, but those are private books, Counsel. Okay? We will identify them for you --
>
> THE WITNESS: And someone can buy them.
>
> MR. PADILLA: -- but we are not going to produce her private property to you.

(Ex. A - March 26, 2015 Dep., p. 98:5-22)

Dr. Kolitz-Russell then refused even to have the manual marked or even copied for use as an exhibit:

> MR. PADILLA: Yeah, I'm having a conversation with you in connection with this absurd request of yours.  It is not going to be marked as an exhibit to this deposition. If you want to make a copy of it, that's another, you know –
>
> THE WITNESS: I can't even allow that.

(March 26, 2015 Dep., p. 99:9-15).  Dr. Kolitz-Russell's objections are frivolous. Before the issue of her failing to follow the proper protocols for administration of the tests, Dr. Kolitz-Russell's freely offered "to read from the HRNES manual, [and] tell you where it says that." (March 26, 2015 Dep., p. 80:12-13).  Only after, Dr. Kolitz-Russell learned that Plaintiffs' had discovered that she was not following the proper testing protocols did she refuse access to the manuals.  Without access to Dr. Kolitz-Russell's copy of the manual, including any notes or

markings made therein, Plaintiffs are unable to validate whether she followed the appropriate instructions or not.  If she didn't, her testing is invalid.  The Court should exclude these test results and all opinions based there upon.

### 6. Charles Proctor did not actually perform an accident reconstruction.

Defendants expert disclosure for their accident reconstruction expert, Charles Proctor, includes anticipated testimony regarding the below subjects, none of which actually born out during his testimony in deposition.  He should be precluded from addressing any of these areas at trial, and counsel should be precluded from suggesting or asserting the following opinions:

a) <u>How the collision actually occurred.</u>

Mr. Proctor admitted that he is not rendering any opinions to tell the jury how the collision actually occurred or how it more likely than not occurred. Rather, he is simply making calculations based on Mr. Nichols' testimony and/or assumptions that he has made.  To that end, Mr. Proctor should be prevented for rendering any opinions that Mr. Luihn's negligence was the cause of the collision and/or that the Defendant truck driver was free of any fault in causing the collision.

> Q.  And so your -- **in your opinions that you offer in this case, you're not saying more likely than not this happened**…;
>
> Q. Correct?
>
> A. Yes, that would be correct.

(Proctor Dep. 33:5-6)(emphasis added).

> Q.  …**you're not saying that's what happened that day**, you're saying that, if you give me the assumptions that the truck driver gave, then this is how the math works out, correct?
>
> A.  That is correct.

(Ex. B - Proctor Dep. 80:10-14)(emphasis added).

> Q. All right. But you're not saying in particular on this particular day Mr. Luihn ever saw a red light?
>
> A. That would be correct.

(Ex. B - Proctor Dep. 87:1-4).

> Q. And, again, are you saying here -- **you're not saying necessarily that that is what happened in this case**; you're simply saying that if -- as you've referenced the assumption that Mr. Nichols entered while the light was still yellow at the end of that sequence, if that happened, then a vehicle approaching from Mr. Luihn's direction would see the red light and the front section of the tractor entering into the intersection, yes?
>
> A. That's correct.

(Ex. B - Proctor Dep. 87:14-23)(emphasis added).

> Q. All right. The next -- your next opinion is -- by the way, your number four, again, **you're not saying that on the date in question, with respect to Mr. Luihn, he brought his vehicle to a stop in 140 feet; you're not saying that, correct?** You're not saying on the date in question Mr. Luihn braked from 50 miles an hour and stopped in 140 feet, correct?
>
> A. That would be correct. He impacted at approximately 25 miles per hour.
>
> Q. You're just simply saying in the abstract, if we take a vehicle like Mr. Luihn's and we assume a 50-mile an hour start, we assume a certain amount of relatively aggressive but not overly aggressive braking, he should be able to stop in 140 feet?
>
> A. Yes.

(Ex. B - Proctor Dep. 106:5-20)(emphasis added).

  b) <u>Physical forces between vehicles and associated motions and forces experienced by the participants of crash.</u>

Mr. Proctor testified that he is not disputing any injuries suffered by Mr. Luihn. (Ex. B - Proctor Dep. 118:4-16). Mr. Proctor also admitted that he is not offering any opinions in terms

of injury causation (Ex. B - Proctor Dep. 28:22-25).

**7.     Any opinion testimony from any expert that was not disclosed as a part of a report or at deposition.**

All experts should be limited to rendering opinions that were disclosed as a part of a report and/or at deposition.

**8.     Arias comments that he charged based on the type of timepiece.**

Dr. Arias stated in jest that his charges were dependent upon whether the patient was wearing a Rolex watch or not.  This was simply a failed attempt at humor and should not be admitted into evidence.  Permitting the defense to capitalize on such a remark would only serve to inflame the jury and would be unfairly prejudicial to the Plaintiffs.

**9.     Opinions and arguments that the United States is a litigious society.**

During Dr. Suite's deposition, Dr. Suite was asked what percentage of his work involved patients that were "claiming disability, claiming personal injury or claiming workers compensation."  Dr. Suite responded, "[p]robably 80 percent"… because he had a "special interest" in neortrauma. (Suite at p. 19:11-15).

Dr. Suite then offered the following unsolicited, non-responsive, offhand remark:  "when that happens in this country there may be a lawyer or two lurking somewhere."  (Ex. C - Suite at p. 19:16-18).  The attorney for the Defendants replied "in this country is the operative word," to which Dr. Suite agreed.  (Ex. C - Suite at p.19:19-20).

This exchange should be excluded from the trial of this case, as should be any arguments or inferences that citizens of our country improperly seek redress in the courts for injuries and wrongs.  It is axiomatic that people who have been injured and who have a claim for disability, workers compensation befits or compensation from a tort-feasor seek the assistance of attorneys.

Indeed, for good or bad, the vast majority of claimants have legal representation as does the government in SSDI hearings, the employer in workers compensation case, and the tort-feasor in personal injury cases. The system by which others seek redress in other countries for disability, on the job injuries or as result of injuries caused by the negligence of other is of no concern and wholly irrelevant to the issues before this Court.

Reference to or evidence of lawsuits or the purported litigious nature of our society should be excluded because any potentially probative value is outweighed by its prejudicial impact and the likelihood of confusion to the jury. Furthermore, the evidence sought to be excluded is not relevant, nor probative to issues to be presented at trial. *See Tacy v. Kellner*, 697 So. 2d 932, 933 (Fla. 2d DCA 1997).

**10. References to percentage of general population suffering from anxiety, depression or other conditions and ailments.**

Any statement made by defense counsel as to what percentage of the population may or may not suffer from anxiety or depression. Whether others may suffer from anxiety or depression is irrelevant and speculative. Any such attribution to a percentage results is improper and places the attorneys as witness.

**11. Reference to needs of third persons based on those persons test scores.**

The statement that other individuals with similar scores do not need attendant care made in the Arias deposition. What others may or may not need is irrelevant and speculative.

**12. Claims of exaggeration, magnification and malingering.**

Any testimony that Plaintiff did not use his best efforts, exaggerated or magnified his symptoms, is malingering, has poor motivation, has motivations of secondary gain, and/or produced impairment results which are inconsistent or failed to comport with the "expected" results.

**13. When Plaintiff Contacted Counsel.**

Defense counsel should not be permitted to introduce any evidence or discuss when Plaintiff contacted her attorney. This information is irrelevant and prejudicial. *Watson v. Builders Square, Inc.,* 563 So.2d 721 (Fla. 4th DCA 1990).

**14. Recovery not Subject to Federal Income Tax.**

Defense counsel should not be permitted to discuss the fact that any recovery by Plaintiff would not be subject to federal income tax. *See Comfort Makers, Inc. v. Kenton*, 515 So.2d 1384 (Fla. 5th DCA 1987); *Good Samaritan Hospital Assoc., Inc. v. Saylor*, 495 So.2d 782 (Fla. 4th DCA 1986); and *Osteen v. Freitas*, Case No. 84-1864, Slip Opinion (5th DCA).

**15. Opinions Regarding Credibility of the Plaintiff.**

Personal opinions by an expert witness, or any other witness, regarding the credibility of the Plaintiff. *General Telephone Company v. Wallace*, 417 So. 2d 1022 (Fla. 2d DCA 1982), (Expert testimony regarding a witness' honesty is improper); *Fullerton v. Fullerton*, 709 So. 2d 162 (Fla. 5th DCA 1998), (Expert testimony regarding a witness' truthfulness is inadmissible). *See also Toomer v. State*, 599 So. 2d 780 (Fla. 3d DCA 1992), (It is improper to ask a witness if another witness is lying); *Feller v. State*, 637 So. 2d 911 (Fla. 1994), (It is error for an expert to state a belief that a victim was telling the truth); *Kingle v. State*, 536 So. 2d 202 (Fla. 1989), (It is error to prevent an expert to testify she believed the victim was truthful)). Such issues are left to the purview of the jury.

**16. Settlement Negotiations and/or Offers.**

Defense counsel should not be permitted to make any statements in regards to offers made to the Plaintiff by or on behalf of Defendants from any source.

17. **Possible versus Probable Testimony.**

Experts should not be allowed to speculate as to "possible" causes of injury as experts must testify to a reasonable degree of [medical] certainty and anything, including aliens, are possibilities. This is exactly the sort of junk opinion that *Daubert* instructs the court to keep out.

18. **Prior Settlements and Defendants.**

Any reference to any prior or subsequent claims, suits or settlements arising out of this incident, and any reference to the dismissal or release of other defendants. *Vucinich v. Ross,* 893 So.2d 690 (Fla. 5th DCA 2005); F.S.A. § 768.041.

19. **Testimony of Witnesses Regarding the Credibility of Other Witnesses.**

All witnesses at trial must be prohibited from testifying as to the credibility of other witnesses. *See Mendez v. State*, 898 So. 2d 1141, 1144 (Fla. 5th DCA 2005) ("A witness is not allowed to offer an opinion as to the credibility of another witness.") (citing *Feller v. State*, 637 So. 2d 911, 915 (Fla. 1994)). Thus, none of the Defendants' witnesses can comment as to the credibility of any of the other witnesses, and the Defendants should be prohibited from offering such testimony in any form.

20. **Value of Claim.**

A lawyer may not render a personal opinion regarding the value of a claim. *See Carroll v. Dodsworth*, 565 So. 2d 346 (Fla. 1st DCA 1990). As such, counsel for the Defendants must be prohibited from providing any such opinion at trial.

21. **Consequences of Verdict.**

All parties should be prohibited from making any comments with respect to the consequences of the verdict on either party. In Florida, it is improper to make an argument based on the consequences of a verdict. *See Padrino v. Resnick*, 615 So. 2d 698 (Fla. 3d DCA 1992).

*See also Klose v. Coastal Emergency Servs. of Ft.Lauderdale, Inc.,* 673 So 2d 81 (Fla. 4th DCA 1996) (defense counsel in a medical malpractice case should not have been permitted to suggest that a verdict for the plaintiff would adversely affect the doctor's professional reputation); *Norman v. Gloria Farms, Inc*., 668 So. 2d 1016 (Fla. 4th DCA 1996) (defense counsel argued that a verdict for the plaintiff would have adverse consequences on the recreational use of land within the county).

This includes any reference or suggestion that Defendant is underinsured, unemployed, out of business, is a little person, one-man shop, small and struggling, or any other such reference which would tend to convey to the jury the impression that Defendant is a party of modest means. Should Defendant violate this, Plaintiffs would submit that this opens the door and asks permission to state that the Defendants are insured and Northland Insurance Company will pay the verdict.

Finally, this includes any reference or suggestion as to what the Plaintiffs will or might do with the compensation or that it would change their style of living or socioeconomic class.

22. **Social Issues.**

A lawyer may not make an argument based on an indirect social issue that is common to all cases in a particular class. *See Davidoff v. Segert*, 551 So. 2d 1274 (Fla. 4th DCA 1989). In *Davidoff* the court reversed for a new trial because the lawyer had referred to the "insurance crisis." *Id.* The court held that the comment had an effect on the jury's ability to judge the evidence fairly. *Id*. *See also Norman v. Gloria Farms, Inc.,* 668 So. 2d 1016 (Fla. 4th DCA 1996) (granting a new trial in part because defense counsel made an argument against runaway verdicts and frivolous lawsuits); *Stokes v. Wet-n-Wild, Inc.*, 523 So. 2d 181 (Fla. 5th DCA 1988) (granting new trial in part because Defendant improperly referenced "crowded courtrooms").

Any suggestion to the jury of the need for tort reform or the like.  Thus, the Defendants must be prohibited from making such comments at trial.

### 23. Trial Tactics.

Both parties should be prohibited from commenting on trial tactics of the other side, especially in personal injury cases. Statements about trial tactics in personal injury cases in general are not appropriate. *See Donaldson v. Cenac*, 675 So. 2d 228 (Fla. 1st DCA 1996) (the court noted that the trial court also erred in allowing the comment "it's not uncommon for plaintiff's attorneys to put up some ridiculous number fifty times what they really do expect to get").

### 24. Witnesses' Absence.

Any challenge to opposing counsel to tell the jury the reason certain witnesses did not testify, or the reason deposed witnesses were not at trial. *Riggins v. Mariner Boat Works, Inc.* 545 So. 2d 430 (Fla. 2d DCA 1989).  That Plaintiffs have not called witnesses equally available to both sides or represent what they would have said.

### 25. Prior and Subsequent Unrelated Injuries.

Any reference to prior and subsequent injuries, diseases, conditions or illnesses, including psychiatric and psychological conditions or the effects thereof, which are not medically related by expert medical testimony to the Plaintiff's present condition, the incident at issue and claimed injuries in this case.

### 26. Collateral Source Payments.

Defendants should be precluded from any mention that Plaintiff has received, has been entitled to receive, or will in the future be entitled to receive benefits of any kind from a collateral source, including, but not limited to, the following:

      a. Benefits from hospitalization, medical or other collateral insurance coverage.

      b. Services furnished without charge.

      c. Services paid for by or on behalf of the Plaintiff's from Medicare or Medicaid.

27. **Medical Treatment, Charges Incurred.**

Reference to or evidence of Plaintiff's choice of medical treatment or challenging whether the charges incurred by the Plaintiff were "reasonable and necessary" through expert testimony should be excluded because any potentially probative value is outweighed by its prejudicial impact and the likelihood of confusion to the jury. Furthermore, the evidence sought to be excluded is not relevant, nor probative to issues to be presented at trial. *See Tacy v. Kellner*, 697 So. 2d 932, 933 (Fla. 2d DCA 1997).

28. **Medical Treatment, Reductions.**

Reference to contractual reductions of Plaintiff's medical bills before the jury should be excluded because any potentially probative value is outweighed by its prejudicial impact and the likelihood of confusion to the jury. Furthermore, the evidence sought to be excluded is not relevant, nor probative to issues to be presented at trial. *See Tacy v. Kellner*, 697 So. 2d 932, 933 (Fla. 2d DCA 1997).

WHEREFORE, the Plaintiffs, by and through the undersigned counsel, hereby move this Honorable Court for an order in *limine* requiring that the Defendants, their attorneys and all witnesses be instructed and precluded from offering any argument, testimony, evidence as to the aforementioned issues and to grant all further relief as this Court deems just and proper.

Date:    April 13, 2105.

**FRIED ROGERS GOLDBERG, LLC**


*/s/ Joseph A. Fried*
JOSEPH A. FRIED
Florida Bar No. 0040850
*Attorney for Plaintiffs*
3560 Lenox Road NE
Suite 1250
Atlanta, GA 30326
Telephone:  (404) 591-1800
Telecopier:  (404) 574-6247
joe@frg-law.com


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via CM/ECF this 13th day of April, 2015 to:  Jorge Padilla, Esq., Attorney for MXI, Inc. and Frank Nichols, luksmia-pleadings@ls-law.com, Luks, Santaniello, Petrillo & Jones, 150 West Flagler Street, Suite 1675, Miami, Florida 33130; Bruce M. Trybus, Esq., Attorney for State Farm, btrybus@ctkplaw.com, Cooney, Trybus, Kwaynick, Peets, 1600 W. Commercial Blvd., Suite 200, Ft. Lauderdale, Florida 33309; Morgan G. Adams, Esq., adams@tennesseeaccidentlaw.com, 1419 Market Street, Chattanooga, TN 37402; Dorothy Clay Sims, dcs@ocalaw.com, Sims & Stakenborg, 118 W. Fort King Street, Ocala, FL 34471; and Joseph A. Fried, joe@frg-law.com, Fried Rogers Goldberg LLC, 3560 Lennox Road, NE, Suite 1250 Atlanta, Georgia 30326-4275.

**FRIED ROGERS GOLDBERG, LLC**


*/s/ Joseph A. Fried*
JOSEPH A. FRIED
Florida Bar No. 0040850
*Attorney for Plaintiffs*
3560 Lenox Road NE
Suite 1250
Atlanta, GA 30326
Telephone:  (404) 591-1800
Telecopier:  (404) 574-6247
joe@frg-law.com