UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 14-CV-21515-GAYLES/TURNOFF

JACOB LUIHN AND
JOHANNA LUIHN,

    Plaintiffs,

v.

MX, INC., ET AL.,

    Defendants.
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION IN *LIMINE* TO EXCLUDE EXPERT TESTIMONY OR EVIDENCE WHETHER PLAINTIFF MALINGERED, EXAGGERTAED OR LACKED EFFORT DURING EXAMINATIONS**

Defendants, MX, INC. ("MXI") and FRANK NICHOLS ("Nichols") (collectively, "Defendants"), by and through undersigned counsel, hereby file their Response to Plaintiffs' Motion in *Limine* to Exclude Expert Testimony or Evidence Whether Plaintiff Malingered, Exaggerated or Lacked Effort During Examinations, and as grounds state as follows:

**BACKGROUND**

This matter arises from a March 13, 2012, intersection automobile and tractor trailer collision involving co-Plaintiff, Jacob Luihn ("Luihn" or "Plaintiff") and Nichols, who was driving a tractor trailer for co-Defendant MXI, at the time of the incident. Luihn alleges that he sustained injuries as result of the collision, while co-Plaintiff, Johanna Luihn ("Mrs. Luihn") is claiming loss of consortium damages.

As part of the defense of the lawsuit, Defendants disclosed eight (8) medical experts: (1) Dr. Anthony Dorto; (2) Dr. Charles Citrin; (3) Dr. Marc Engle; (4) Dr. Jose Nadine Garcon; (5) Dr. Kenneth Jarolem; (6) Dr. Robert L. Kagan; (7) Dr. Ray Lopez; and (8) Dr. Sally Kolitz-Russell (collectively, the "Defendant's Experts").

Mr. and Mrs. Luihn (collectively, "Plaintiffs") seek to limit/exclude the Defendants' Experts' testimony as to any opinion regarding whether Mr. Luihn malingered, exaggerated symptoms or faked effort during medical/physical examinations. [D.E. 158] More specifically, Plaintiffs claim that opinion testimony from Defendants Experts regarding whether Mr. Luihn malingered, exaggerated or faked effort should be excluded because (1) the experts opinions were not disclosed pursuant to Federal Rule of Civil Procedure 26; and (2) such opinions are not properly "supported by reliable facts, data or scientific criteria." *Id*.

Defendants stipulate that (1) Dr. Anthony Dorto; (2) Dr. Charles Citrin; (3) Dr. Marc Engle; (4) Dr. Jose Nadine Garcon; (5); Dr. Robert L. Kagan; and (7) Dr. Ray Lopez will not offer any testimony with regards to Mr. Luihn malingering, exaggerating symptoms or faking effort during medical/physical examinations. However, Dr. Sally Kolitz-Russell and Dr. Kenneth Jarolem do have such opinions and said opinions were properly disclosed pursuant to Federal Rule of Civil Procedure 26 and are based upon reliable facts, data and/or scientific criteria.

## ARGUMENT

Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires experts to disclose a "complete statement of all opinions the witness will express and the basis and reasons for

them." *See also Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (recognizing that the expert disclosure provisions of Rule 26 require "not only the identification of the expert, but also the provision of a written report containing a complete statement of all opinions and the basis and reasons therefore").

Evidence should only be excluded on a motion in *limine* when the evidence is clearly inadmissible on all potential grounds. *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.* 2004 WL 1970144, at *4 (S.D. N.Y. Sept 3, 2004).

In ruling on admissibility of expert testimony, a trial court must determine whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. Fed. R. Evid. 702. In requiring that expert testimony be directed to "scientific, technical or specialized" knowledge, Rule 702 governing admission of such testimony ensures that expert witnesses will not testify about lay matters which a jury is capable of understanding and deciding without an expert's help. *Andrews v. Metro North Commuter Railroad Co.*, 882 F.2d 705, 708 (2d Cir. 1989).

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. Fed. R. Evid. 702. Moreover, an expert may testify in terms of opinion or inference and give the reasons for his opinion. Fed. R. Evid. 705.

a. <u>Dr. Kolitz-Russell's Findings of Malingering</u>

Defendants disclosed Dr. Kolitz-Russell as an expert witness on December 22, 2014. [D.E. 63] As part of the disclosure, and pursuant to Rule 26(a)(2)(B)(i), Defendants provided Plaintiffs with Dr. Kolitz-Russell's Neuropsychological Evaluation of Mr. Jacob

(the "Report").  *See Neuropsychological Evaluation, dated October 15, 2104, attached as Exhibit "A."*

As required, the Report provides Dr. Kolitz-Russell's opinions, as well as the basis and reasons for them.  *Id.*  With regards to whether Mr. Jacob was malingering, exaggerating or faking effort, Dr. Kolitz-Russell states/opines as follows:

- Discussing Plaintiff's expert/treating physician, Dr. Alejandro J. Arais' Neuropsychological Report: "On the TOMM, a second measure to assess for attempts at feigning cognitive impairment and malingering, his performance was below expectancy (Trial 1 = 29, Trial 2 = 41, Retention Trial = 35) . . . Most significantly, Mr. Luihn performed quite poorly on this administration of the TOMM, and Dr. Arias correctly questioned the possibility of variable effort[.]"  *Id.* at 9.

- Again discussing Dr. Arais' Neuropsychological Report: As "Dr. Arias failed to mention several instances in which Mr. Luihn's scores actually decreased, as compared to his earlier evaluation or to Dr. Garcon's earlier testing.  Such decreases in performance do not make neuropsychological sense in the context of the expected pattern of recovery from an alleged traumatic brain injury."  *Id.* at 14.

- During the independent medical examination with Dr. Kolitz-Russell, Mr. Luihn frequently asked for repetition of instructions and/or repeated the examiners statements spontaneously.  Dr. Kolitz-Russell noted that Mr. Luihn's physicians had never reported such prior behavior.  Such behavior could be "volitional," and was not consistent with the expected course of recovery following a traumatic brain injury. *Id.* at 19.

- Dr. Kolitz-Russell also noted that at the end of the vocabulary test, Mr. Luihn asked: "Is this a dream?"  Mr. Luihn described his hands, as well as other things not looking "real."  Such behavior was highly unusual and not previously described by treating physicians.  *Id.* at 19 – 20, 31.

- Mr. Luihn's performance on nonverbal reasoning and spatial-perception tasks was within normal limits, but he had performed within normal average to above average range on the subtest twice before.  Similarly, [Mr. Luihn's] performance on a subtest measuring psychomotor and processing speed was far below average, yet his prior two performances were in the average to above average range.  Such performance was not consistent with the expected pattern of recovery from an alleged traumatic injury.  Potential

explanations for such decreases included variable effort and motivation. *Id.* at 22.

- Dr. Kolitz-Russell also noted that Mr. Luihn's performance in certain executive functioning tests declined, which did not make neuropsychological sense. *Id.* at 23.

- Also noted by Dr. Kolitz-Russell, was that Mr. Luihn's performance on Dr. Arais' first administration of neuropsychological tests was above average, while his performance on the second administration was average and could reflect variable effort. *Id.* at 25.

- Dr. Kolitz-Russell noted that the score discrepancies in Mr. Luihn's memory test did not make neurological sense. *Id.* at 26.

- Mr. Luihn's poor strategy on the free call portion of the test was "rather unusual."

- Dr. Kolitz-Russell, in summary, found that Mr. Luihn's pattern of performance on tests dealing with memory function was rather unusual with numerous inconsistencies. The inconsistencies on the memory tests were not consistent with a case of traumatic brain injury. *Id.* at 27 – 28, 30.

- Inconsistencies were also noted across Mr. Luihn's four neuropsychological evaluations and that such decrease in performance would not be expected in the context of recovery from a traumatic brain injury, and other factors such as variable effort and motivation would be more likely explanations. *Id.* at 29.

- Mr. Luihn also produced scores on Dr. Kolitz-Russell's evaluation that were lower than his scores on other similar, but harder tests. Such inconstancies did not make neuropsychological sense. *Id.*

Therefore, contrary to Plaintiffs position, Dr. Kolitz-Russell's report, which was timely produced pursuant to Rule 26, did in fact address Mr. Luihn's malingering, exaggeration and lack of effort during examination. For the same reason, Plaintiffs assertion that Dr. Kolitz-Russell's disclosed for the first time that Mr. Luihn malingered or exaggerated during her second deposition on March 26, 2015, is simply incorrect and not supported by the record.

Moreover, Dr. Kolitz-Russell's opinions are not based on "gut feelings," but rather, based upon her review of Mr. Luihn's medical records, observations and the battery of neuropsychological tests she administered, including the: Wechsler Adult Intelligence Scale—Third Edition, Halstead Category Test, Trails B, Boston Naming Test, Aphasia Screening Test, Cross-Drawing Test, Trails A, Trails Speed, Perceptual Disorders Examination, Miami Selective Test, MSVT and Million Clinical Multiaxial Inventory-III. *Id.* at 20—21.  Therefore, her opinions as to Mr. Luihn's malingering is based on more than just a "gut feeling," but wholly based on the scientific method.

Moreover, Dr. Kolitz-Russell was specifically asked at her deposition about whether Mr. Luihn was exaggerating, and she stated:

> Well, I do believe overall there is exaggeration.  I do believe there maybe exaggeration in the neuropsychological realm and even the psychological realm of certain things, even in my interview, that didn't make any sense with brain injury.  *See Pg. 59, Ln. 9—11 of the Deposition of Dr. Sally Kolitz-Russell dated March 26, 2015, attached as Exhibit "B."*

< …>

> I find it extremely strange, and I can't explain it neuropsychologically or with brain injury, that in my testing almost all the time he would repeat whatever I or my psychometrician said, and would ask questions of almost every single direction we gave, consistent with the video deposition of him that I watched.  Yet, in Dr. Arais' reports, there was no indication that he had this type of behavior.
>
> And since Dr. Arias tested up to two years before I did, this didn't make sense with brain injury.  That's the big—the really big thing that I have noticed that does not make sense.  *Id.* at Pg. 59, Ln. 24 – Pg. 60, Ln. 16.

Dr. Kolitz-Russell affirmatively stated that Mr. Luihn was exaggerating and explained the basis for her opinions, which was also outlined in the Expert Report. Therefore, it cannot be said that Plaintiffs were surprised, ambushed or that Defendants failed to provide a "complete statement of all opinions the witness will express and the basis and reasons for them," pursuant to Rule 26.

Also, as stated *supra*, Dr. Kolitz-Russell's report details the basis for her opinion and discusses her review of Mr. Luihn's medical records, previous neuropsychological testing, as well as the battery of neuropsychological tests that she performed. The probative value of Dr. Kolitz-Russell's report and opinion on Mr. Luihn's malingering, exaggerating and lack of effort serves to assist the jury in understanding and evaluating Mr. Luihn's injuries, and is backed by medical and scientific facts, which Dr. Kolitz-Russell relied upon to reach her opinion. Such information is admissible as the basis of an expert's opinion and must not be excluded.

  b. <u>Dr. Jarolem's Findings of Malingering</u>

Similarly, Defendants retained Dr. Jarolem, an orthopedic surgeon as an expert witness in this matter. Dr. Jarolem was properly disclosed pursuant to Federal Rule of Civil Procedure 26 and as part of the disclosure, Defendants provided Plaintiffs with a copy of Dr. Jarolem's One-Time Comprehensive Report ("IME Report"). [D.E. 85] Dr. Jarolem examined Mr. Luhin on September 30, 2014, prior to issuing the IME Report. *See IME Report, attached as Exhibit "C."*

Notably, for the purposes of this Response, Dr. Jarolem's IME Report clearly indicates that Mr. Luihn continues to complain of left elbow and hand pain resulting from a

March 13, 2012, motor vehicle accident. *Id.* at Pg. 1. The IME Report further outlines each and every one of Mr. Luihn's radiographic and diagnostic studies Dr. Jarolem reviewed, as well as every medical record that he studied as part of his evaluation. *Id.* at 2 – 9. Moreover, the IME Report specifically states that:

> Based on interview of the claimant, physical exam and review of the medical records, there is no permanent orthopaedic injury to Mr. Luihn as a result of the accident of 3/13/12. . . . [N]o further treatment is necessary to Mr. Luihn as a result of the accident of 3/13/12.
>
> His orthopaedic injuries include a non-displaces fracture of the left radial styloid. The fracture has gone on to heal. The fracture is no longer visible. The range of motion is normal.
>
> In my opinion, the charges for chiropractic treatment at South Florida Pain and Rehab were excessive for the condition diagnosed in the medical records. The chiropractic bill exceeded seventeen thousand dollars for therapy treatment, which in [Dr. Jarolem's] opinion was excessive.

In addition to being provided the IME Report, the Plaintiffs were afforded the opportunity to take the deposition of Dr. Jarolem and fully explore his expert opinions. *See Deposition of Dr. Kenneth L. Jarolem, dated February 25, 2015, attached as Exhibit "D."*

At his deposition, Dr. Jarolem testified that he reviewed Mr. Luihn's medical records to determine the injuries he sustained. *Id.* at Pg. 11, Ln. 24 – Pg. 12, Ln. 3. Mr. Luihn sustained a left non-displaced distal radius fracture. *Id.* at Pg. 14, Ln. 11—13; Pg. 17, Ln. 17—22; Pg. 45, Ln. 5--20. Dr. Jarolem found that that orthopedic information in this case was very clear. *Id.* at Pg. 23, Ln. 10 – 13. Dr. Jarolem could find nothing specific to point to Mr. Luihn's subjective complaints of pain. *Id.* at Pg. 31, Ln. 19—22. As the fracture completely healed in the anatomic position and there was full range of motion, there was

no objective reason for Mr. Luihn to be experiencing pain.  *Id.* at Pg. 32, Ln. 1 – Pg. 33, Ln. 6; Pg. 36, Ln. 19--21.  The "number one" differential diagnosis that could explain Mr. Luihn's complaints of pain would be malingering, magnification and secondary gain.  *Id.* at Pg. 32, Ln. 4—25; Pg. 57, Ln. 16 – Ph. 58, Ln. 1.  In fact, Mr. Luihn's pain should have resolved within eight weeks of the injury.  *Id.* at Pg. 34, Ln. 5—7.  The longer the pain persists after eight weeks, the less likely it is related to the fracture and the more likely it is related to other issues.  *Id.* at Pg. 34, Ln. 8—13; Pg. 58, Ln. 9—19.

Dr. Jarolem is a board certified orthopedist with over twenty years of experience.  As such, based on his experience, training, education, observations, review of the medical records, interview of Mr. Luihn and the physical examination, Dr. Jarolem opined that there was no objective reason for Mr. Luihn to be experiencing pain.  The "number one" differential diagnosis that could explain Mr. Luihn's complaints of pain was malingering, magnification and secondary gain.

Dr. Jarolem's opinion regarding malingering, magnification and secondary gain fall squarely into the type of opinion testimony that an expert may provide.  Dr. Jarolem's testimony that Mr. Luihn's was malingering was not based on speculation, but rather, on a differential diagnosis.  *Id.* at Pg. 33, Ln. 4—25.  As such, the testimony is entirely proper and should not be excluded.

For the above reasons, Plaintiffs' Motion in *Limine* to Exclude Expert Testimony or Evidence Whether Plaintiff Malingered, Exaggerated or Lacked Effort During Examinations should be denied with respect to Dr. Kolitz-Russell and Dr. Jarolem.

WHEREFORE, Defendants respectfully requests an Order denying Plaintiffs' Motion in Limine, and asks that the Court grant any such further relief as it deems necessary and proper.

April 30, 2015                                      Respectfully submitted,

                                                    LUKS, SANTANIELLO,
                                                    PETRILLO & JONES
                                                    *Attorneys for Defendant MX, Inc., and*
                                                    *Frank Nichols*
                                                    150 W. Flagler Street, Suite 2750
                                                    Miami, FL  33130
                                                    Telephone:  (305) 377-8900
                                                    Facsimile:  (305) 377-8901


                                                    By: */s/ LUIS MENENDEZ-APONTE*
                                                         DANIEL J. SANTANIELLO, B.C.S.
                                                         Florida Bar No.: 860948
                                                         LUIS MENENDEZ-APONTE
                                                         Florida Bar No.:  772771
                                                         JORGE PADILLA
                                                         Florida Bar No.: 0054517
                                                         LUKSMIA-Pleadings@LS-Law.com

**I HEREBY CERTIFY** that I filed the foregoing document with the Clerk of the Court electronically on April 30, 2015.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive electronic Notices of Electronic Filing.

*/s/ LUIS MENENDEZ-APONTE*
LUIS MENENDEZ-APONTE

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

*JACOB LUIHN v. MX, INC., et al.*

**SERVICE LIST**

Daniel J. Rheaume, Esq.
Welt & Rheaume, P.A.
4770 Hollywood Blvd.
Hollywood, FL 33021
pleadings@wrflalaw.com

Morgan Adams, Esq.
Law Offices of Morgan Adams
1419 Market St.
Chattanooga, Tennessee 37402
adams@tennesseeaccidentlaw.com
jennifer@tennesseeaccidentlaw.com

Dorothy Sims, Esq.
Sims & Stakenborg, P.A.
P.O. Box 3188
Ocala, FL 34478-3188
dcs@ocalaw.com

Joseph A. Fried, Esq.
FRIED ROGERS GOLDBERG, LLC
3560 Lenox Road NE
Suite 1250
Atlanta, GA 30326
joe@frg-law.com
sarah@frg-law.com

Rachel Turner Davant, Esq.
Billing, Cochran, Lyles, Mauro & Ramsey, P.A.
SunTrust Center, 6th Floor
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
rtd@bclmr.com

Lawrence N. Rosen
Assistant United States Attorney
99 NE 4th Street, Suite 300
Miami, FL  33132
Larry.Rosen@usdoj.gov