UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-CV-21515 – GAYLES/TURNOFF

JACOB LUIHN and JOHANNA LUIHN,

        Plaintiffs,

v.

MX, INC and FRANK NICHOLS,

        Defendants.

_____

**PLAINTIFFS' SEPTEMBER 23, 2015 OMNIBUS PRETRIAL MOTION**

COME NOW the Plaintiffs, by and through the undersigned counsel, and hereby move this Honorable Court for the relief and rulings, set forth herein, to-wit:

**I.**    **TRIAL DEPOSITIONS OF DEFENDANTS FRANK NICHOLS AND MX, INC.**

Plaintiffs seek an order from the Court instructing Defendants to provide to counsel for Plaintiffs on or before 3:00 p.m. on Monday, November 2, 2015 with written confirmation guaranteeing that Mr. Nichols and MX, Inc.'s corporate representative and owner, Don Martin, will be present at the trial of this case now scheduled to begin on November 30, 2015. In the event that Defendants are unable to provide a written confirmation guaranteeing either person presence at trial, Plaintiffs seek an order from the Court instructing Defendants to make each such person available to Plaintiffs for an evidentiary deposition to take place on or before Friday, November 20, 2015, which shall no way impair Plaintiffs' ability to subpoena either for any such evidentiary deposition.

While both Defendant Nichols and Mr. Martin were deposed during discovery, both depositions took place well before this Court granted Defendants' motion to divide this trial into

three phases. Neither discovery deposition was designed or intended to serve as an evidentiary deposition in any event, nor were they structured for use at a bi-furcated, a tri-furcated, or even a standard trial.

However, just as Defendant Nichols argued in brief [Dkt. 304] that he should be able to attend the trial to advance his defense, so too should the Plaintiffs be able to have the Defendants appear at trial in person or by evidentiary deposition to undergo cross-examination before the jury. If either will not be appearing live at trial, Plaintiffs have the right to take that Defendant's evidentiary deposition for use at trial in lieu of their appearance.

When Plaintiffs sought last sought to take the evidentiary deposition of Defendant Nichols for use at trial, Defendants objected on grounds that he had already been deposed during discovery. Certainly, the Defendants are aware of the distinctions and differences between a discovery deposition and an evidentiary deposition. It is, of course, axiomatic that discovery depositions and evidentiary deposition are very different in structure, scope and purpose. Discovery depositions, by definition, are taken for the broad purpose of discovering information about the witnesses, such as their education, their training, their upbringing, their experience, their social circles, their knowledge of the relevant issues at trial, their opinions, their biases and/or leanings in the realm of social, religious and political issues, among other far-ranging purposes. Most of this discovered information will never be used at trial unless a Defendant attempts to change his or testimony at trial; then, one can count on its use.

An evidentiary deposition, on the other hand, is honed, simplified and focused on specific issues and facts learned from the discovery deposition and from other sources. The evidentiary deposition has a very purposeful structure specifically designed to highlight critical pieces of testimony and evidence as efficiently as possible right in front of the jury.

If counsel for Defendants cannot guarantee that Mr. Nichols and Mr. Martin will be present at the trial of this civil action, Plaintiffs request that this Court direct counsel for Defendants to provide dates during the week of November 16, 2105, on which Plaintiffs may take the evidentiary deposition of each such Defendant for purpose of cross-examination for use during phase one, two and/or three of the trial.

A. **Frank Nichols.**

This case was set to be tried on July 27, 2015. As Plaintiffs' counsel prepared for trial, they learned that Defendant Nichols was then a prisoner in the Bartow County, Georgia jail and would not be attending the trial of this action. Therefore, in order to obtain cross-examination testimony for use in phase one, two and/or three of the trial, Plaintiffs noticed and subpoenaed [See, Dkt. 302] the trial deposition of Defendant Nichols to take place at the Bartow County jail on July 24, 2015.

On July 21, 2015, Mr. Nichols, through his counsel, moved the Court for a continuance or in the alternative a *writ of habeas corpus ad testificandum*, [See, Dkt. 304]. In his motion, Defendant Nichols asserted that he needed to and would attend the trial if he were not being held prisoner in the Bartow County jail. On July 22, 2015, Plaintiffs consented to a continuance of the subject trial, in part, because counsel for Defendants represented that Mr. Nichols would be out of jail and that he would attend a continued trial in person.

B. **Corporate Representative of MX, Inc.**

Defendant MX, Inc. chose its owner, Don Martin, to testify on its behalf at a discovery deposition taken on October 9, 2014, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Upon information and belief, Defendants do not intend to ensure that Mr. Martin will appear live at trial. Defendants have not listed Mr. Martin as a person who will be present at trial

in their Pretrial Stipulations. It is also Plaintiffs understanding that Mr. Martin, the owner and corporate designee for MX, Inc. is refusing to appear at the trial of this case. Mr. Nichols resides outside of this Court's jurisdictional powers to compel his attendance at trial. However, he is within the subpoena power of this Court to appear at an evidentiary deposition at his place of work or residence.

Like Defendant Nichols, Plaintiffs intend upon calling Mr. Martin as a live witness during Plaintiffs' case-in-chief for the purpose of cross-examination in phase one, two and/or three of the trial. If Mr. Martin will not be present at trial, Plaintiffs must secure his evidentiary deposition for the purpose of cross-examination for use in phase one, two and/or three of the trial.

**C.   Certificate of Good Faith Conference; Conferred but Unable to Resolve Issues Presented in the Motion.**

Pursuant to Local Rule 7.1(a)(3)(A), the undersigned certifies that counsel for the movant has conferred with all parties or nonparties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues. Specifically, on Friday, September 11, 2015, counsel for Plaintiffs and Defendants held a telephone conference regarding these issues, wherein counsel for Defendants agreed that Defendants would not object to Plaintiffs efforts to take the evidentiary deposition of Mr. Martin. However, Defendants would not place any guarantees in writing and could not provide any dates at that time. Counsel for Defendants requested that the filing of this motion be withheld and, in return, agreed to provide dates for the deposition of Mr. Martin on or before September 22, 2015. Likewise, counsel for Defendants have not provided any written guarantees that Defendant driver Nichols would actually be at trial nor have any dates for his evidentiary depositions been

provided. Plaintiffs have filed the present motion in good faith so that these matters can be resolved expeditiously and without further delay of the trial of this matter.

        **D.**     **Request for Relief**

Plaintiffs seek an order from the Court instructing Defendants to provide to counsel for Plaintiffs on or before 3:00 p.m. on Monday, November 2, 2015 with written confirmation guaranteeing that Mr. Nichols and MX, Inc.'s corporate representative and owner, Don Martin, will be present at the trial of this case now scheduled to begin on November 30, 2015. In the event that Defendants are unable to provide a written confirmation guaranteeing either person's presence at trial, Plaintiffs seek an order from the Court instructing Defendants to make each such person available to Plaintiffs for an evidentiary deposition to take place on or before Friday, November 20, 2015, which shall no way impair Plaintiffs' ability to subpoena either for any such evidentiary deposition.

        **II.**     **RULE 403 EXCLUSION OF EXPERT WITNESSES DR. JOSE GARCON AND/OR DR. SALLY KOLITZ-RUSSEL**

        **A.**     **Defendants should not be permitted to use two experts from the same field of expertise to provide the same opinions and conclusions to the jury.**

Defendants seek to rely upon two experts in the area of neuropsychological testing in the defense of Plaintiffs' claim for damages. Defendants intend upon calling: (1) Dr. Jose Garcon, whose office was retained by the Social Security Administration to administer a battery of neuropsychological tests upon Plaintiff Luihn, and (2) Dr. Sally Kolitz-Russell, who was retained by Defendants to serve as a testifying expert in the area of neuropsychological testing in this case. Both expert witnesses will opine that, based on neuropsychological testing, Plaintiff

Luihn did not suffer a traumatic brain injury.[1]

Dr. Garcon was initially retained by the Social Security Administration to evaluate and determine whether or not Plaintiff Luihn was "disabled" as defined by federal law. Dr. Garcon was not retained to render an opinion as to whether or not Mr. Luihn suffered a traumatic brain injury. Because Defendants are seeking to rely upon an opinions from Dr. Garcon that are clearly outside and beyond the purpose of her testing of Plaintiff Luihn, federal law require that Dr. Garcon be treated and identified as a "specially retained expert" not as an independent expert or as a treating physician. Indeed, Defendants made this clear in their own briefing submitted to this Court:

> When, as here, the treating physician's testimony extends beyond the facts disclosed during his or her care and treatment of the patient, **he or she is considered a "specially retained expert"** subject to the provisions of Rule 26(a)(2)(A) and (B). *Williams v. Asplundh Tree Expert Co.*, No. 3:05-cv-479-J-33MCR, 2006 WL 2868923 *1, *6 (M.D. Fla. 2006) (*citing Patel v. Gayes*, 984 F.2d 214, 218 (7th Cir. 1993)) (emphasis added).

[Dkt. 224 at pp.3-4].

In addition to calling Dr. Garcon as an expert in this area of neuropsychological testing, Defendants also intend upon calling another specially retained expert witness in the very same area to area provide the same opinion testimony. To that end, Defendants retained Dr. Kolitz-Russell to meet and test Plaintiff Luihn herself and also to review, compare, and evaluate all other previous testing[2] with her own and to incorporate all such previous testing into her conclusions and opinions.

---

[1] Defense counsel emphatically represented to this Court that Dr. Garcon would also be testifying that in her opinion Plaintiff Luihn did not suffer a traumatic brain injury. (Exhibit A, May 8, 2015 Hearing at p. 33:11-13).

[2] Dr. Alejandro J. Arias also administered neuropsychological testing to Plaintiff Luihn and conducted his own neuropsychological assessment.

Defendants ensured that Dr. Kolitz-Russell received the complete files and deposition testimony of Dr. Arias and of Dr. Garcon and her staff members. On October 2, 2014, Dr. Kolitz-Russell obtained the raw test data from the WMS-IV testing administered by one of Dr. Garcon's staff members. (Exhibit B, Kolitz-Russell March 26, 2015 depo. at p. 9:3-15). At the same time, Dr. Kolitz Russell was provided with Dr. Garcon's notes and Dr. Garcon's completed evaluation. (*Id*. at p. 10:9-24). Defendants likewise provided Dr. Kolitz-Russell with the depositions of Dr. Arias and Dr. Garcon. (*Id*. at p. 38:4-24).

In addition Defendants provided numerous other materials to Dr. Kolitz-Russel for her review in this case, to-wit:

1. Reports from Dr. Citron dated January 18, 2015 and February 23, 2015;
2. The February 10, 2015 deposition of Dr. Andrew Walker;
3. The March 16, 2013 neurological evaluation of Dr. Ray Lopez;
4. The January 28, 2015 deposition of Dr. Lopez;
5. The February 12, 2015 deposition of Dr. Robert Kagan; and
6. The February 13, 2015 deposition of Dr. Nicholas Suite.

(*Id*. at p. 38:4-24).

Dr. Kolitz-Russell took all of the raw test scores taken over time by Dr. Arias and Dr. Garcon's staff and then compared those results to her own results. In fact, she made charts comparing various testing and other data and incorporated them into her own conclusions, to-wit:

- "**I have a chart here I made of Dr. Arias's scores, Dr. Garson's [sic] scores, Dr. Arias's second testing, and my testing**. … I am going to concentrate on the neuropsychological tests." (Exhibit C, Kolitz-Russell January 16, 2015 depo. at pp. 101:1–7) (Emphasis added).
- "**I have a chart here comparing Dr. Arias's two testings and mine and Dr. Garson's [sic]**." (*Id.* at p. 121:13-15) (Emphasis added).
- "**I am only talking about my neuropsychological test data, when**

- **compared with Dr. Arias' two testings and the tests given in common in some of Dr. Garson's testing**." (*Id.* at pp. 130:23 – 131:1) (Emphasis added).
- "[I]n this case, he did pass the test of effort and motivation. But also, **I have a chart here comparing Dr. Arias's two testings and mine and Dr. Garson's**, and his scores in about 12 of the areas keep going down." (*Id.* at p. 121:12-19) (Emphasis added).

Dr. Kolitz-Russell will not be commenting on any of the brain imaging studies like DTIs or MRIs.  (*Id.* at p. 131:1-2).  Rather, Dr. Kolitz-Russell will be summarizing the testing data from Dr. Arias' testing and from Dr. Garcon's office's testing; comparing those tests results and conclusions with her own; and rendering an opinion based on the same that Plaintiff Luihn did not suffer a brain injury, to-wit:

> "[W]hen you use the validated standardized battery, the pattern of test results for traumatic brain injury caused by head trauma can be discerned, but not only that, what is most important is comparing raw test scores over time in similar tests given and to see whether the pattern of test results makes sense with traumatic brain injury. **And that's what I have done, because this gentleman has been tested twice by Dr. Arias [once by Dr. Garcon] and once by me**. So putting all of that together, and being trained as a neuropsychologist, I certainly can opine as to whether the pattern of test scores are consistent with traumatic brain injury."

(*Id.* at pp. 47:16 – 48:3).

Defendants improperly intend to rely upon two experts:  Dr. Kolitz-Russell and Dr. Garcon, to testify on the very same issue.  Both Dr. Kolitz-Russell and Dr. Garcon are the same type of experts: neuropsychologists.  Neither adds significantly different information or opinions than the other.  Although Dr. Kolitz-Russell is arguably more thorough by incorporating data from both Dr. Arias and Dr. Garcon's office's testing, both she and Dr. Garcon reach the same opinion that Plaintiff Luihn did not suffer a traumatic brain injury.

Defendants' use of these two experts is clearly cumulative, repetitive and needlessly time

consuming. Moreover, the use of two experts offering essentially the same opinion each bolstering the other is unfairly prejudicial because of the real risk that jurors will react by placing more weight on their testimony and opinions, because of the cumulative nature of the same.

> **B.** **The use of both Drs. Garcon and Kolitz-Russell to present the exact same expert opinions is unfairly prejudicial, cumulative and unnecessarily time consuming.**

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Presentation of cumulative evidence exists where testimony of several witnesses would be the same, and one witness's testimony would be sufficient. *See United States v. Haynes*, 554 F.2d 231, 234 (5th Cir. 1977) (holding that the district court did not abuse its discretion in limiting testimony to only one witness where additional witnesses would have provided the same testimony).

Indeed, "the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004); *see also Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S. Ct. 1119, 1122, 8 L. Ed. 2d 313 (1962). Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse. *Id*.

In *Frazier*, the Eleventh Circuit Court of Appeals held that exclusion an expert witness under Rule 403 is appropriate, if that expert's testimony is cumulative or needlessly time consuming. *Frazier*, 387 F.3d at 1263. Likewise, in *Tran v. Toyota Motor Corp.*, the Eleventh Circuit affirmed the district court's exclusion of cumulative expert testimony at trial, where the

excluded expert relied upon the same evidence as the expert, who was permitted to testify. *Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1315 (11th Cir. 2005). In support of its decision to exclude one of two duplicative experts, the district court noted that in addition to testifying on the same issue, both experts had similar qualifications, and neither would have would have added significantly different information. *Tran*, 420 F.3d 1310 at 1315; *see also First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1574-75 (5th Cir. 1996) (holding that district court did not abuse discretion in excluding as cumulative expert's testimony that would have covered the same ground as that of testifying witness).

Because Defendants will be using an expert, Dr. Kolitz-Russel, specifically retained to testify in this case and to provide the exact same type of opinion evidence concerning not only her own neuropsychological testing of Plaintiff Luihn but also the neuropsychological testing performed by Dr. Arias and Dr. Garcon, no prejudice will be caused to Defendant with the exclusion of Dr. Garcon.

This Court has already applied these concepts by limiting the Plaintiffs to the use of a single expert on the issue of whether Mr. Luihn's traumatic brain injury was caused by the subject collision. At a pre-trial hearing held by this Court on May 8, 2015, the Court heard argument on Defendants' [Doc. 224] Motion in Limine to Strike or Alternatively Limit the Opinion Testimony of Plaintiff Jacob Luihn's Treating Physicians. During argument, counsel for Plaintiffs advised the Court that Plaintiffs likely would have two experts testifying as to causation, linking the injury to the subject collision. (Exhibit A, May 8, 2015 Transcript at pp. 53:9-54:10). The Court responded by asking:

"**Why should I allow you two experts to testify as to causation?**"

(*Id.* at p. 54:11-12)(Emphasis added). Ultimately, the Court limited Plaintiffs to the use of a

single expert on the issue of causation. Following its own rationale, this Court should limit the Defense to the use of a single expert on the issue of whether neuropsychology tests show that Plaintiff Luihn did not suffer a traumatic brain injury, either Dr. Kolitz-Russell or Dr. Garcon.

### C.  Dr. Garcon's testimony is unfairly prejudicial to Plaintiffs.

Aside from being a cumulative witness, Dr. Garcon is an unfairly prejudicial witness. Dr. Garcon performed an evaluation of Plaintiff Luihn at the request of the Social Security Administration for the limited and sole purpose of determining whether Plaintiff Luihn was "disabled," i.e., whether or not he could do "any type of low skilled employment." (Exhibit D, Garcon Depo. at p. 39:12-17). During her deposition, she admitted that she has never even met Plaintiff Luihn. (*Id.* at p. 42:9-18). Ultimately, the administrative law judge did not accept her conclusions that he was not "disabled" and awarded Plaintiff Luihn disability benefits.

At this Court's hearing on Plaintiffs request that they be permitted to introduce evidence that Dr. Garcon's findings disregarded by the administrative law judge, Defendants vigorously objected. Defendants argued:

> "The Social Security Administration's board … that made this decision [to find disability] is a quasi-judicial board that applies a completely separate standard than the standard that this Court has to decide and the standard that the jury is going to decide. It goes through a five-step process by which it goes through their report and ultimately makes the decision."

(Exhibit A, May 8, 2015 Transcript at pp. 31:23-32:4).

Defendants continued, arguing that the Social Security's process and determinations regarding whether or not Plaintiff Luihn was "disabled" as defined by federal law are not relevant in this case, because they do not tend to prove a fact a fact that is at issue in this case. Based on this argument, this Court ruled that Plaintiffs would not be able to impeach or cross-examine Dr. Garcon regarding the fact that her findings were disregarded by the very entity that

retained her.

This Court should apply the same rationale and preclude the admission of Dr. Garcon's testing and conclusions regarding whether or not Plaintiff Luihn was "disabled" as defined by federal Social Security law.[3] That issue has been decided as a matter of law. The Social Security Administration has ruled as a matter of law that Plaintiff Luihn is "disabled" in spite of Dr. Garcon or anyone else may believe.

Permitting Dr. Garcon to testify that in her opinion, Plaintiff Luihn is not "disabled" is unfairly prejudicial in and of itself. When Dr. Garcon uses the term "disabled," it is a legal term defined by 20 CFR § 404.1505 not common parlance. Thus, by permitting her to offer her opinions regarding "disability" to a jury, the Court is permitting her to offer opinions that are not only moot, but entirely false. Whether or not Dr. Garcon now or did believe that Plaintiff Luihn is or was "disabled" per Social Security regulations is irrelevant in this civil action.

As practical matter, the only entities that are interested in "disability" determinations are insurance companies and the Social Security Administration. In either case, once a juror hears the words "disability" or "disability determination," that juror will certainly be distracted with concerns over whether or not Plaintiff Luihn is receiving disability benefits, either from the government or from an insurer. Of course, this is the last concern about which jurors should be concerning themselves. Any such disability benefits would be evidence of collateral source payments, which the Court has already ruled inadmissible. No reason exists to interject any such evidence or inference into this trial other than to unfairly prejudice the Plaintiffs claim for damages.

---

[3] The basic definition of disability is set forth in 20 CFR § 404.1505. Disability as used by Dr. Garcon and the Social Security Administration has a precise and specific legal meaning, which is different than the term is used in normal common parlance.

This Court, having accepted Defense counsel's argument that the SSDI board "applies a completely separate standard than the standard that this Court has to decide and the standard that the jury is going to decide," should exclude <u>all aspects</u> of that determination effort, including Dr. Garcon's very specific and limited charge of opining whether or not Plaintiff Luihn was "disabled" as defined by federal law.  This Court is not and should not be distracted nor should it permit jurors to be distracted with talk and testimony of Social Security "disability" testing, determinations, or conclusions.

### D. <u>For purposes of this civil action, Dr. Garcon is a "specially retained expert" and should be treated as such</u>.

Much discussion was had at the May 8, 2015 hearing regarding whether it would be fair to simply tell the jury that Dr. Garcon was retained by some, un-named third-party for the purpose of determining disability.  The Defendants asserted this as a fair solution. It is not only unfair, but it also contradicts prior representations made by Defendants in this case.  Specifically that "[w]hen, as here, the treating physician's testimony extends beyond the facts disclosed during his or her care and treatment of the patient, he or she is considered a "specially retained expert" subject to the provisions of Rule 26(a)(2)(A) and (B)."  *See,* Dkt. 224 at pp. 3-4; *see also* pp. 6-7 hereinabove.

Moreover, it should be noted that it was Dr. Garcon's staff member, not Dr. Garson herself, who administered neuropsychological testing in conjunction with Plaintiff Luihn's application for disability benefits. (Exhibit D, Garcon March 13, 2015 Depo. at p 39:18-22).  Dr. Garcon has never even met or interacted with Plaintiff Luihn. (Garcon March 13, 2015 Depo. at p 42:12-18).  Based on testing alone, Dr. Garcon concluded that Plaintiff Luihn was capable of some "lower level employment."  (*Id*. at p 47:16-19).  After disregarding, the conclusions reached by Dr. Garcon, the administrative law judge for the Social Security Administration

granted his application for disability benefits.

To the extent that Dr. Garcon would add any additional opinion evidence, it would be related to an impermissible and irrelevant subject: whether or not Plaintiff Luihn is disabled as defined by the Social Security regulations, which was her charge.  Moreover, in addition to being irrelevant to the issues to be decided by this Court, the mention of the word disability will naturally lead some jurors to believe and or to concern themselves with whether or not Plaintiff Luihn is receiving disability benefits. Certainly, we can all agree that such issues are irrelevant, inadmissible and unfairly prejudicial.  Finally, no reason exists to introduce such issue into this trial, if the Court desires to exclude all references and inferences regarding Social Security disability determinations.

**E.     Certificate of good faith conference; Conferred but unable to resolve issues presented in the motion.**

Pursuant to Local Rule 7.1(a)(3)(A), the undersigned certifies that counsel for the movant has conferred with all parties or nonparties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues. Specifically, on Friday, September 11, 2015, counsel for Plaintiffs and Defendants held a telephone conference regarding these issues wherein, no agreement to resolve this controversy could be reached.  Counsel agreed that this issue needed to be resolved by the Court.

**F.     Request for Relief.**

Plaintiffs seek an order from the Court prohibiting Defendants from using both Dr. Garcon and Kolitz-Russell at the trial of this cause and directing Defendants to identify, which of these two experts Defendants will use at trial on or before Friday, November 13, 2105.  If Defendants choose to rely upon the opinion testimony of Dr. Garcon at trial, Plaintiffs also seek an order directing all parties to refer to Dr. Garcon as an expert retained specially retained by

Defendants. If Defendants choose, to rely upon the opinion testimony of Dr. Kolitz-Russell, no reference should be made as to who retained Dr. Garcon, nor should she be referred to as Plaintiff Luihn's treating physician or an independent witness, but merely that Dr. Garcon's office performed the tests ultimately relied upon by Dr. Kolitz-Russell.

### III.     SUPPLEMENTAL REPORT OF DR. ANDREW T. WALKER

On June 15, 2015, Mr. Luihn's treating neurologist, Andrew T. Walker, M.D., generated an updated report based upon his continuing evaluation and treatment of Plaintiff Jacob Luihn. The opinions contained in Dr. Walker's report have not changed nor have they been altered as compared to any prior opinions he has rendered in this case. Rather, the addendum report is simply an update of Mr. Luihn's medical condition and the opinions set forth therein are consistent with Dr. Walker's prior opinions.

Though Defendants deposed Dr. Walker on February 4, 2015 concerning his opinions and the basis for the same, Defendants objected to the use or reference to Dr. Walker's most recent July 15, 2015 report because trial was scheduled to take place on July 27, 2015. Because the report happened to be generated so close to trial, the Court precluded its use or reference.

The Defendants have requested a continuance from trial and the Court having granted the same and moving this trial to November 30, 2015, Defendants' objection to Dr. Walker's updated report is now moot.

#### A.     Certificate of good faith conference; Conferred but unable to resolve issues presented in the motion

Pursuant to Local Rule 7.1(a)(3)(A), the undersigned certifies that counsel for the movant has conferred with all parties or nonparties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues. Specifically, on Friday, September 11, 2015, counsel for Plaintiffs and Defendants held a

telephone conference regarding these issues wherein counsel for Plaintiffs offered Defendants the opportunity to take an updated deposition of Drs. Walker and Suite limited to the addendums contained in Dr. Walker's report. Counsel for Plaintiffs also agreed that defense experts would be free to comment and opine upon the July 15, 2015 Walker addendum during trial. Thereafter, counsel for Plaintiff sent follow-up emails to defense counsel seeking to resolve the issue. Defendants have neither objected to nor agreed to resolve this issue. Nor have Defendants made any further inquiry into taking an updated deposition of Drs. Walker or Suite regarding the July 15, 2015 addendum.

### B.     Request for Relief

Plaintiff move this Court to reconsider its previous ruling as being mooted by the continuance of this trial and to enter an order permitting Plaintiffs to use and reference Dr. Walker's July 27, 2015 addendum report in the trial of this case.

WHEREFORE, the Plaintiffs, by and through the undersigned counsel, hereby move this Honorable Court for the relief set forth herein and to grant all further relief as this Court deems just and proper.

Date:   September 23, 2015

                                                            **FRIED ROGERS GOLDBERG LLC**

                                                            */s/ Joseph A. Fried*
                                                            JOSEPH A. FRIED
                                                            FLORIDA STATE BAR NUMBER 0040850
                                                            ATTORNEY FOR PLAINTIFFS

TWO ALLIANCE CENTER
3560 LENOX ROAD, N.E.
SUITE 1250
ATLANTA, GEORGIA 30326-4275
TEL. 404-591-1800
FAX  404-574-6247
Email:  joe@frg-law.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 23rd day of September, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system. I also certify that the foregoing document is being served this date on all counsel of record or pro se parties on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other manner for those counsel who are not authorized to receive electronic Notices of Electronic Filing.

*/s/ Joseph A. Fried*
JOSEPH A. FRIED

**SERVICE LIST**

| | |
|---|---|
| Jeffrey L. Welt, Esq.<br>Daniel J. Rheaume, Esq.<br>WELT & RHEAUME, P.A.<br>4770 Hollywood Blvd.<br>Hollywood, FL 33021<br>pleadings@wrflalaw.com | Jorge Padilla, Esq.<br>Derek Hamilton Lloyd, Esq.<br>LUKS, SANTANIELLO, PETRILLO & JONES, PA<br>150 W. Flagler Street, Suite 2750<br>Miami, Florida 33130<br>luksmia-pleadings@ls-law.com<br>jpadilla@ls-law.com<br>derek.h.lloyd@gmail.com |
| Morgan Adams, Esq.<br>LAW OFFICES OF MORGAN ADAMS<br>1419 Market St.<br>Chattanooga, Tennessee 37402<br>adams@tennesseeaccidentlaw.com<br>Jennifer@tennesseeaccidentlaw.com | Jack Roy Reiter, Esq.<br>Jordan Scott Kosches, Esq.<br>GRAYROBINSON, P.A.<br>333 SE 2nd Avenue<br>Suite 3200<br>Miami, FL 33131<br>jack.reiter@gray-robinson.com<br>jordan.kosches@gray-robinson.com |
| Dorothy Sims<br>SIMS & STANKENBORG, P.A.<br>PO Box 3188<br>Ocala, FL 34478-3188<br>dcs@ocalaw.com | |